IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

NANCY K. ILARDI, )
 )
    Plaintiff, )
 )
v. ) Case No. 09-CV-279-GKF-PJC
 )
DOMESTIC VIOLENCE )
INTERVENTION SERVICES, INC. )
 )
    Defendant. )

## OPINION AND ORDER

Before the Court for determination is the Motion to Compel of Plaintiff Nancy K. Ilardi ("Ilardi") [Dkt. No. 15]. A hearing on the motion was held Feb. 24, 2010. For the reasons set forth below, the Motion to Compel is **DENIED**.

*Factual Allegations*

Plaintiff alleges that she was the victim of age discrimination when she was terminated from her job with Defendant ("DVIS"). Plaintiff began at DVIS as a volunteer paralegal housed at DVIS' Family Safety Center. After several months as a volunteer, DVIS hired Ilardi on August 20, 2009, to serve as a Client Services Representative. She was terminated one month later. *Complaint* [Dkt. No. 2, ¶¶ 12 & 14].

On the day of her termination Ilardi told at least two DVIS employees that she might file a lawsuit. She told Donnie Haas, payroll manager, that if she did not get paid for the month she worked "I would hire an attorney." [Dkt. No. 16, Exhibit "E", p. 100, line 2 – p. 101, line 13]. Ilardi told Kelly Bell, another DVIS employee, that "I was going

to get an attorney and file a lawsuit." [Dkt. No. 16, Exhibit "E", p. 114, lines 12-17]. Ilardi was not sure who else at DVIS heard her threats to sue. [*Id.*, p. 119, lines 3-16]. Donna Mathews ("Mathews"), Associate Director of DVIS and also an attorney, has submitted an Affidavit stating that Ilardi told her supervisor, Eilene Pirtle, on the day she was fired that she intended to file a lawsuit against DVIS.[1] [Dkt. No. 16, Exhibit "C," ¶ 5.].

Around Dec. 7, 2009, DVIS President Alan Weeks ("Weeks") received a letter from Ilardi expressing displeasure with her "unjust termination." [Dkt. No. 15, Exhibit 5]. Ilardi stated that it was her understanding that she was fired not because of her job performance but as "a statement to show employees the power Ms. [Tracey] Booth wields." *Id.* Ilardi said that she had left a position at another company to take the DVIS job and that following her termination from DVIS, "I was replaced by a girl who is 21 years old, and I am sure not hired for her vast years of experience." Ilardi asked that Weeks "do something to rectify this situation." *Id.* The letter noted that Ilardi had not been paid "until I informed DVIS I would hire an attorney to receive my fair wages." *Id.*

Mathews met with Executive Director Tracey Lyall ("Lyall") shortly after Ilardi's letter was received to discuss it. Mathews was authorized to draft a memo regarding Ilardi's allegations. [Dkt. No. 16, Exhibit "C," ¶¶ 8-9.

---

[1] Pirtle's statement is hearsay under Fed. R. Evid. 801; however, the Court will consider the statement not for the truth of the matter asserted therein but as support for Mathews' belief that Ilardi was "very angry about DVIS terminating her services." [Dkt. No. 16, Exhibit "C" ¶5].

Mathews' memo, dated Dec. 26, 2009, was sent to Weeks.[2] Mathews did not consult with an attorney before drafting the memo.[3] [Dkt. No. 15, Exhibit 3, p. 8, line18 – p. 9, line 22]. A copy was also given to Lyall.[4] [Dkt. No. 16, Exhibit "C."]. Mathews states that she drafted the memo in anticipation of Ilardi filing a lawsuit against DVIS. And that the memo was meant to gather information necessary to defend such a lawsuit. *Id.*

Ilardi seeks production of the two-page memo; DVIS contends the document is protected work product.

### *Applicable Legal Principles*

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides for discovery "regarding any matter, *not privileged*, that is relevant to the claim or defense of any party" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1) (emphasis added). By excluding privileged information from the broad sweep of discovery, Rule 26 tries to strike a balance between promoting the truth-seeking goal of discovery and the purpose of the stated privilege.

Attorney work product is governed by the standard set forth in Fed. R.

---

[2] The two-page memo was submitted to the Court at the Feb. 24 hearing for *in camera* review.
[3] Mathews is a lawyer whose duties including overseeing the DVIS staff attorneys.
[4] Around the same time, DVIS provided the memo to outside litigation counsel, Sharolyn C. Whiting-Ralston. Whiting-Ralston also reviewed Ilardi's Dec. 7 letter and advised Weeks in responding to it. [Dkt. No. 16, Exhibit "B," ¶¶ 5-7).

Civ. P. 26(b)(3).[5]  The goal of the attorney work product doctrine is to protect "an attorney's subjective analysis and substantive efforts in, or in anticipation of, litigation from use by the adverse party."  *Adams v. Gateway, Inc.,* 2003 WL 23787856 at *8 (D.Utah).

A party seeking work product immunity under Rule 26(b)(3) must establish that the materials are  (1) "documents and tangible things;" (2) "prepared in anticipation of litigation or for trial;" (3) "by or for another party or by or for that other party's representative." *Feldman v. Pioneer Petroleum, Inc.*  87 F.R.D. 86, 88 (W.D.Okla.1980) (quoting 8 Wright and Miller, Federal Practice and Procedure: Civil § 2024 at 196-197).

---

[5]  The Rule provides:

*Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

**(i)** they are otherwise discoverable under Rule 26(b)(1); and

**(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).

The proponent of the work-product claim has the burden of establishing the protection. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *Sanchez*, 229 F.R.D. at 654. Establishing work-product protection often depends on a showing that there was a reasonable threat of litigation and that the threat was the motivation for creating the document(s) in question. Epstein, *supra*, at 825; *United States ex rel. Fago v. M&T Mortgage Corp.*, 238 F.R.D. 3, 6 (D.D.C. 2006) ("'In anticipation of litigation' contains two related, but nevertheless distinct, concepts. One is temporal. The other is motivational."). Courts sometimes address this last issue in terms of a party's "primary motivation" for creating documents. *Accounting Principles, Inc. v. Manpower, Inc.*, 2009 WL 2252123 (N.D.Okla. July 28, 2009). A key inquiry is whether the document for which protection is sought would have been created "*regardless* of whether litigation was in the offing." Epstein, *supra*, at 855 (emphasis added). In other words, "the anticipation of future litigation must have been the primary motivation which led to the creation of the documents." *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 136 (N.D.Ill.1993). While the litigation need not be ongoing or imminent, "the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C.1982). In sum, "[d]ocuments which do not refer to work product prepared by an attorney or other agent of a party to aid in forthcoming litigation,

and which were generated in the ordinary course of business, are discoverable."
*Allendale Mut. Ins.*, 152 F.R.D. at 136.

*Discussion*

A. **Anticipation of litigation.**

From a review of the facts herein the Court concludes that by Dec. 7, 2009, DVIS anticipated that Ilardi would file a lawsuit concerning termination of her employment. Ilardi had made that clear to Kelly Bell and Donnie Haas and others who may have heard her remarks on the day she was terminated. Upon receipt of Ilardi's Dec. 7, letter DVIS' anticipation of litigation was no doubt heightened. In that letter Ilardi, a paralegal, complained of her "unjust" termination, mentioned that she had already threatened a lawsuit over unpaid wages, and demanded that DVIS President Weeks "rectify the situation." Given Ilardi's remarks on the day she was fired and the tone of her letter, DVIS reasonably anticipated litigation. Nor can it be said that Ilardi's threat was limited to filing a lawsuit over the one month's wages she felt entitled to. Ilardi's comments were reasonably perceived as a threat to sue over her perceived "unjust termination," possibly based on age discrimination.

B. **Motivation for the Dec. 26, Memo.**

Shortly after DVIS received Ilardi's letter, Mathews met with the DVIS Executive Director to discuss it. Mathews, an attorney, was directed to compose a memo concerning Ilardi's employment. Mathews states that her sole motivation in drafting the memo was to "gather and memorialize information I

6

considered necessary to defend against allegations recently made by Nancy Ilardi and to convey my opinions and conclusions regarding those allegations." [Dkt. No. 16, Exhibit "C," ¶ 11].  Mathews sent the memo to DVIS President Weeks and believes she copied the executive director.  Outside litigation counsel also received the memo around this time and outside counsel was consulted about the Ilardi matter.

Plaintiff contends that the memo was actually drafted chiefly for use by DVIS President Weeks in responding to Ilardi's Dec. 7 letter.  Thus, Ilardi argues, the memo's primary purpose was not litigation.  The Court does not recognize this fine distinction.  By the time of Ilardi's letter, DVIS anticipated she would file a lawsuit.  Clearly, Weeks needed to be informed and properly advised in crafting his response to Ilardi, knowing that his letter would likely be an exhibit in future litigation – as it is.  *See* Dkt. No. 15, Exhibit 7.

If they did not anticipate litigation before Dec. 7, 2007, after receiving Ilardi's letter Mathews and others at DVIS certainly did.  This caused Mathews to prepare her two-page memo concerning Ilardi's employment.  The memo was based on Mathews' recollection of events and interviews with various DVIS employees.  It was not part of a standard in-house investigation and was not mandated by any internal DVIS policy.  Mathews states that she would not have created the memo but for her expectation of litigation and for use in preparing for that litigation.  [Dkt. No. 16, Exhibit "C," ¶11].  The Court concludes that the memo would not have been prepared but for the threat of litigation.

7

The memo was created by a person who is an attorney and oversees DVIS' staff attorneys. It was created in anticipation of litigation and for the primary purpose of gathering information necessary for a defense of any such litigation. Therefore, the memo is protected attorney work product.

Accordingly, for the reasons set forth above, the Motion to Compel [Dkt. No. 15] is **DENIED.**

IT IS SO ORDERED this 3rd day of March 2010.

_____
Paul J. Cleary
United States Magistrate Judge